UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA BENTLEY,

        Plaintiff,

v.

NEA MANAGEMENT GROUP LLC,
NEA FINANCIAL MANAGEMENT GROUP, LLC,
1ST SOUTHERN FINANCIAL SERVICES, LLC,
WD GLOBAL GROUP LLC,
OAK AT THE LEAGUE LLC,
OAK ATL LEAGUE LLC,
CASSIUSUIS T. SIMON,
WILLIE G. IVY,
SHAQUANA YVONNE JACKSON, and
WALDEN MCKENLY DAVIS JR.,

        Defendants.
_____/

## COMPLAINT

## I.    Introduction

1.    Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit credit card account and fake debt. Defendants are debt collectors and credit identity thieves who acquired and used the stolen information and counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution and other adverse consequences, and extort the payment of money from plaintiff.

2.    Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.*

1

3.     Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution and other adverse consequences unless the consumers pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.     These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5.     On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

6.     Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S.

2

District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

7.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

## II.      Jurisdiction

8.      The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.     Parties

9.      Plaintiff Barbara Bentley is an adult, natural person. Ms. Bentley is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Bentley is a "person" as the term is defined and used in the DPPA.

10.      Defendant NEA Management Group LLC ("NEA"), also known as NEA Management Group, also known as NEA Management Services, is an active Georgia limited liability company, formed on or about September 17, 2016.  On April 2, 2020, NEA filed with the State of Georgia a Notice of Reinstatement that falsely stated the "Principal Office Address" for NEA is 541 10th Street NW, "Suite 419," Atlanta, Georgia 30318, when in fact, the "Suite" is

merely a private mailbox (No. 419) rented by defendants from The UPS Store No. 2557. NEA has operated its debt collection call center from multiple locations, including: 4500 Satellite Boulevard, Suite 2320, Duluth, Georgia 30094 and 3781 Presidential Parkway, Suite 132, Atlanta, Georgia 30340. The registered agent for NEA is defendant Cassiusuis T. Simon, 541 10th Street NW, "Suite 419," Atlanta, Georgia 30318. NEA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NEA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NEA is a "debt collector" as the term is defined and used in the FDCPA.

11.     On April 3, 2020, defendants registered through GoDaddy.com, LLC, the internet domain www.neamanagement.com. The domain links to an active website that describes NEA as a debt collection agency located at 541 10th Street NW, "Suite 419," Atlanta, Georgia 30318, telephone numbers 844-891-8461 and 765-654-3451 (fax). Defendants use the domain to send and receive email with the addresses info@neamanagement.com and privacy@neamanagement.com.

12.     On October 3, 2016, defendant's agent, non-party Frederick J. Ross, also known as "Rick" Ross, doing business as "Buffalo Technology Solutions," 6271 Bridlewood Drive South, East Amherst, New York 14051-2033, 1420 River Station Drive, Lawrenceville, Georgia 30045-2750 and 3651 Evans Mill Road, Lithonia, Georgia 30038-3404, registered through GoDaddy.com, LLC, the internet domain www.neamanagementgroup.com. The domain linked to a now defunct website that described NEA as a debt collection agency located at 541 10th Street NW, "Suite 419," Atlanta, Georgia 30318, telephone number 678-999-7732. Defendants used the domain to send and receive email with the address info@neamanagementgroup.com.

13.     The Better Business Bureau for Atlanta, Georgia maintains an internet website

4

that contains nearly fifty consumer complaints that describe NEA engaging in the same credit

identity theft and debt collection scam that is described in this complaint.

14.     Defendants also use the email address neamgmt@yahoo.com to conduct their

credit identity theft and debt collection scam.

15.     NEA directly and indirectly participated in the efforts to collect an alleged debt

from Ms. Bentley that are described in this complaint.

16.     Defendant NEA Financial Management Group, LLC ("NEAFMG"), originally

known as NEA Group Collections, LLC, is a Georgia limited liability company, formed on or

about October 27, 2016, with a "Principal Office Address" of 541 10th Street NW, "Suite 419,"

Atlanta, Georgia 30318, which is the same private mailbox (No. 419) rented by defendants from

The UPS Store No. 2557. The registered agent for NEAFMG  is defendant Shaquana Yvonne

Jackson, 8577 Kencrest Drive, Winston, Georgia 30187. NEAFMG uses interstate commerce

and the mails in a business the principal purpose of which is the collection of debts. NEAFMG

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another. NEAFMG is a "debt collector" as the term is defined and used in the

FDCPA.

17.     NEAFMG directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Bentley that are described in this complaint.

18.     On April 12, 2018, four ex-employees of NEA filed a lawsuit against NEA for

doing work as debt collectors and not getting paid in violation of the Fair Labor Standards Act.

*Angela Boyer et al. v. NEA Management Group, LLC,* U.S. District Court, Northern District of

Georgia (Atlanta), Case No. 1:18-cv-01580-WMR. On October 15, 2019, NEA filed a Motion to

Set Aside or Vacate Default Judgment, arguing that "NEA Management Group LLC" had paid its

ex-employees in full (Doc. 13), and attached as supporting documents, the Affidavit of Cassiusuis T. Simon (Doc. 13-1), as well as a photocopy of each ex-employee's final paycheck stub (Doc. 13-2). Each paycheck stub identified as the employer/payor, "NEA Group Collections LLC, 541 10th Street NW, Suite 419, Atlanta, GA 30318-5713, (404) 903-8647," demonstrating that NEA and NEAFMG are operated by defendants as one and the same entity. Telephone number 404-903-8647 is registered to and used by defendant Shaquana Yvonne Jackson to conduct her credit identity theft and debt collection scam.

19.     Defendant 1st Southern Financial Services, LLC ("1SFS") is a Georgia limited liability company, formed on or about January 14, 2019, with a "Principal Office Address" of 5303 Peachtree Boulevard, #406, Chamblee, Georgia 30341. The registered agent for 1SFS is defendant  defendant Cassiusuis T. Simon, 541 10th Street NW, "Suite 419," Atlanta, Georgia 30318. 1SFS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. 1SFS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 1SFS is a "debt collector" as the term is defined and used in the FDCPA.

20.     A portion of the money collected by defendants from their victims is paid over by payment processors to 1SFS.

21.     1SFS directly and indirectly participated in the efforts to collect an alleged debt from Ms. Bentley that are described in this complaint.

22.     Defendant WD Global Group LLC ("WDGG") is an active Georgia limited liability company, formed on or about June 23, 2015, TIN: 47-435699. According to the WDGG annual registration filed with the State of Georgia, the principal office address for WDGG is 2300 Lake Park Drive SE, Suite 150, Smyrna, Georgia 30080, which has been rented by

defendants since December 1, 2017. The registered agent for WDGG is defendant Walden

McKenly Davis Jr., 8725 Roswell Road. "Suite O-256," Sandy Springs, Georgia 30350, but the

"suite" is merely a private mailbox rented by defendants from a Pak Mail franchise. WDGG uses

interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. WDGG regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another. WDGG is a "debt collector" as the term is defined and

used in the FDCPA.

23.     On February 9, 2020, WDGG filed Amended Articles of Organization with the

State of Georgia, stating defendant Walden McKenly Davis Jr. is a Managing Member of WDGG

and defendant Shaquana Yvonne Jackson is a Member of WDGG.

24.     On October 5, 2017, defendants anonymously registered through WhoisGuard,

Inc., the internet domain www.wdglobalgroup.com. The domain links to an active website that

describes WDGG as a "collection agency . . . headquartered in Atlanta, Georgia, with over 25

years of debt collection and account service and collection agency experience at all stages. . . ."

The website provides the address 8725 Roswell Road. "Suite O-256," Sandy Springs, Georgia

30350, telephone number 678-293-5099, and email address info@wdglobalgroup.com.

25.     According to the Georgia State Board of Workers Compensation, in 2018 and

2019, WDGG provided workers compensation insurance to its employees through Hartford

Casualty Insurance Company, Policy No. 76WEGAA9LNA.

26.     WDGG directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Bentley that are described in this complaint.

27.     Defendant Oak At The League LLC ("OATL") is an active Georgia limited

liability company, formed on or about July 11, 2018. According to the OATL annual registration

filed with the State of Georgia, the principal office address for OATL is 8725 Roswell Road. "Suite O-275," Sandy Springs, Georgia 30350, but the "suite" is merely a private mailbox rented by defendants from a Pak Mail franchise. The registered agent for OATL is Vivianne Hardy Townes, 2764 South Clark Drive, Suite A, Atlanta, Georgia 30344. OATL uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. OATL regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. OATL is a "debt collector" as the term is defined and used in the FDCPA.

28.     OATL directly and indirectly participated in the efforts to collect an alleged debt from Ms. Bentley that are described in this complaint.

29.     Defendant Oak Atl League LLC ("OAL") is an active Georgia limited liability company, formed on or about July 11, 2018. According to the OAL annual registration filed with the State of Georgia, the principal office address for OAL is 8725 Roswell Road. "Suite O-275," Sandy Springs, Georgia 30350, but the "suite" is merely a private mailbox rented by defendants from a Pak Mail franchise. The registered agent for OAL is Vivianne Hardy Townes, 2764 South Clark Drive, Suite A, Atlanta, Georgia 30344. OAL uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. OAL regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. OAL is a "debt collector" as the term is defined and used in the FDCPA.

30.     OAL directly and indirectly participated in the efforts to collect an alleged debt from Ms. Bentley that are described in this complaint.

31.     NEA, NEAFMG, 1SFS, WDGG, OATL and OAL are sometimes collectively

referred to as the "Corporate Defendants" in this complaint.

32.     Defendant Cassiusuis T. Simon, also known as Cassiusuis Tillmone Simon, also known as Cassius Simon, also known as "Super Cat," is a natural person, age 37, purportedly residing at: 1284 Atlantic Drive NW, Atlanta, Georgia 30318; 8804 Lake Road, Union City, Georgia 30291; or 104 Mossycup Drive, Fairburn, Georgia 30213. Mr. Simon is an owner, officer, member, manager, employee and agent of the Corporate Defendants. Mr. Simon uses multiple email addresses to conduct his credit identity theft and debt collection scam, including cassius702@yahoo.com. Mr. Simon uses multiple telephone numbers to conduct his credit identity theft and debt collection scam, including 404-201-3688. Mr. Simon uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Simon regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Simon is a "debt collector" as the term is defined and used in the FDCPA.

33.     Mr. Simon has an extensive criminal record, with arrests, indictments and/or convictions for numerous crimes, committed over a period that includes virtually his entire adult life, both misdemeanors and felonies, including: Financial Identity Fraud; Forgery 1st Degree; Felony Concealment of False Statements and Writings; Conversion; Possession of Cocaine; Statutory Rape; Possession of Firearm During a Crime; Child Abandonment; Cruelty to Children Third Degree; Battery; Violation of Probation; Robbery; Disorderly Conduct; Resisting Arrest; Driving While License Suspended; and numerous traffic violations. It will need to be determined whether Mr. Simon is currently on probation for any of his numerous crimes and convictions.

34.     Mr. Simon, despite his prior arrests, indictments and/or convictions for numerous

crimes, owns, operates and oversees defendants' credit identity theft and debt collection scam, with multiple call centers and multiple employees and agents.

35.     Mr. Simon (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Bentley as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants  and their employees and agents, in attempts to collect an alleged debt from Ms. Bentley as stated in this complaint.

36.     Mr. Simon directly and indirectly participated in the efforts to collect an alleged debt from Ms. Bentley that are described in this complaint.

37.     Defendant Willie G. Ivy, also known as Willie George Ivy, is a natural person, age 50, purportedly residing at 3832 Waldrop Hills Drive, Decatur, Georgia 30034 or 7475 Clipper Cove, Stone Mountain, Stone Mountain, Georgia 30087. Mr. Ivy is a manager, employee and agent of the Corporate Defendants. Mr. Ivy uses multiple email addresses to conduct his credit identity theft and debt collection scam, including w1g5i@yahoo.com. Mr. Ivy uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Ivy regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Ivy is a "debt collector" as the term is defined and used in the FDCPA.

38.     Mr. Ivy operates and oversees defendants' credit identity theft and debt collection scam, with overall supervision of defendants' multiple call centers and multiple employees and agents.

39.     Mr. Ivy (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Bentley as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants  and their employees and agents, in attempts to collect an alleged debt from Ms. Bentley as stated in this complaint.

40.     Mr. Ivy directly and indirectly participated in the efforts to collect an alleged debt from Ms. Bentley that are described in this complaint.

41.     Defendant Shaquana Yvonne Jackson is a natural person, age 41, purportedly residing at 8577 Kencrest Drive, Winston, Georgia 30187. Ms. Jackson is an owner, officer, member, manager, employee and agent of the Corporate Defendants. Ms. Jackson uses multiple email addresses to conduct her credit identity theft and debt collection scam, including s.jackson@wdglobalgroup.com. Ms. Jackson uses multiple telephone numbers to conduct her credit identity theft and debt collection scam, including 404-903-8647. Ms. Jackson uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Jackson regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Jackson is a "debt collector" as the term is defined and used in the FDCPA.

42.     Ms. Jackson is licensed (No. 371445) to sell real estate in Georgia and is affiliated with Real Broker LLC, 715 Peachtree Street NE, Atlanta, Georgia 30308, office telephone number 855-450-0442.

43.     Ms. Jackson operates and oversees defendants' credit identity theft and debt collection scam, with overall supervision of defendants' call center and employees and agents located at 2300 Lake Park Drive SE, Suite 150, Smyrna, Georgia 30080.

44.     Ms. Jackson (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and

agents, to collect debts from consumers, including the tactics and scripts that were used to

attempt to collect an alleged debt from Ms. Bentley as stated in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by the Corporate Defendants and their

employees and agents, in connection with their common efforts to collect consumer debts, and (f)

had knowledge of, approved, participated in, and ratified the unlawful debt collection practices

used by the Corporate Defendants  and their employees and agents, in attempts to collect an

alleged debt from Ms. Bentley as stated in this complaint.

45.     Ms. Jackson directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Bentley that are described in this complaint.

46.     Defendant Walden McKenly Davis Jr., also known as Dee Money, is a natural

person, age 41, purportedly residing at 8 Paris Park Place, Unit 8, Sandy Springs, Georgia 30350.

Mr. Davis is an owner, officer, member, manager, employee and agent of the Corporate

Defendants. Mr. Davis uses interstate commerce and the mails in a business the principal purpose

of which is the collection of debts. Mr. Davis regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another. Mr. Davis is a "debt

collector" as the term is defined and used in the FDCPA.

47.     On September 27, 2019, the Internal Revenue Service filed a Federal Tax Lien

(Book 2224, Page 143) in the DeKalb Superior Court - Decatur, against Walden McKenly Davis

Jr., 8725 Roswell Road, "Suite O-256," Sandy Springs, Georgia 30350, which is the same private

mailbox used by WDGG and rented from a Pak Mail franchise.

48.     On March 4, 2020, a UCC Statement (#720008862) was filed with the Barrow

County, Georgia Superior Court Clerks Office, naming defendants Walden McKenly Davis Jr.,

8725 Roswell Road, "Suite O-256," Sandy Springs, Georgia 30350, Oak At The League LLC and Oak Atl League LLC as co-debtors, CT Corporation System as representative for the secured party, and listing as collateral, "general intangibles including proceeds and products," "chattel paper including proceeds and products," "contract rights including proceeds and products" and "accounts including proceeds and products." Upon information and belief, the secured party affiliated with this UCC statement has financed defendants' credit identity theft and debt collection scam, specifically, defendants' purchase of portfolios of allegedly delinquent, stolen and counterfeit consumer accounts.

49.     Mr. Davis (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Bentley as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants  and their employees and agents, in attempts to collect an alleged debt from Ms. Bentley as stated in this complaint.

50.     Mr. Davis directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Bentley that are described in this complaint.

51.     Defendants and their employees and agents, in efforts to conceal their true identities and location, have conducted their credit identity theft and debt collection scam using multiple, unregistered names, including: Diversified Solutions; Diversified Solutions Firm; Diversified Solutions Firm, Collections Division; Diversified Solutions Corporation; Midway Mitigation Group; MM3; Northcrest Phoenix & Associates; and NEA Investigative Services.

52.     Defendants and their employees and agents have conducted their credit identity theft and debt collection scam using multiple email addresses, including: processingclerk@clerk.com.

53.     Defendants and their employees and agents have conducted their credit identity theft and debt collection scam using multiple addresses, including: P.O. Box 7420, Lubbock, Texas 79402; and P.O. Box 6459, Phoenix, Arizona 85003.

54.     Defendants and their employees and agents have conducted their credit identity theft and debt collection scam using multiple telephone numbers, including: 213-333-5705; 213-805-7491; 217-718-6244; 231-333-5705; 301-850-2791; 314-621-3222; 325-480-8447; 347-809-5892; 386-868–0131; 404-903-8647; 406-203-4218; 480-437-2067; 480-937-0257; 480-937-0258; 480-937-0264; 480-937-0282; 480-937-0267; 516-714-3840; 575-680-1292; 607-821-7817; 614-867-9197; 678-293-5099; 704-307-4218; 706-341-0076; 713-960-4042; 727-304-6031; 727-431-9352; 800-371-3817; 805-637-7243; 806-576-3389; 808-626-5003; 815-402-3551; 815-402-3758; 815-402-3798; 815-402-3551; 833-409-9462; 833-637-0169; 855-200-6701; and 952-314-5579.

55.     Non-party PNS Partners, LLC ("PNS"), doing business as Pay N Seconds, is an

active Tennessee limited liability company, doing business at 240 Glenis Drive, Murfreesboro,

Tennessee 37129. PNS maintains an internet website at www.paynseconds.com. PNS is a

registered ISO (Independent Sales Organization) of Synovus Bank, Columbus, Georgia. PNS, for

a fee, provides merchants with a channel to process credit card and debit card payments that are

made to the merchants.

56.     Defendants use PNS to process debit card payments that defendants extort from

consumers in connection with defendants' credit identity theft and debt collection scheme. The

extorted funds are deposited into a Merchant Account at Synovus Bank, maintained by

defendants in the name of WD Global Group LLC.

57.     Defendants' use of the services of PNS and Synovus Bank to defraud consumers

violates the terms of defendants' contracts with PNS and Synovus Bank and makes PNS and

Synovus Bank complicit in defendants' credit identity theft and debt collection scheme.

58.     Non-party Zen Master Group LLC is an active Georgia limited liability company,

formed July 2, 2018, with a principal office address of 8725 Roswell Road, "Suite O-275,"

Sandy Springs, Georgia 30350, but the "suite" is merely a private mailbox rented by defendants

from a Pak Mail franchise. The company is managed by defendant Walden McKenly Davis Jr.

and non-party Mary Davis. It will need to be determined in discovery to what extent, if any, Zen

Master Group LLC participated in the efforts to collect an alleged debt from Ms. Bentley that are

described in this complaint.

59.     Non-party D'Aur Properties LLC is an active Georgia limited liability company,

formed October 6, 2008, with a principal office address of 8725 Roswell Road, "Suite O-275,"

Sandy Springs, Georgia 30350, but the "suite" is merely a private mailbox rented by defendants

16

from a Pak Mail franchise. The company is managed by defendant Walden McKenly Davis Jr.

On September 11, 2019, a UCC Statement (#06019007134) was filed with the Fulton County,

Georgia Superior Court Clerks Office, naming D'Aur Properties LLC as debtor, Advantage

Platform Services Inc. as secured party, and listing as collateral, "intangibles and proceeds,

inventory and proceeds, and negotiable instruments and proceeds." It will need to be determined

in discovery to what extent, if any, D'Aur Properties LLC participated in the efforts to collect an

alleged debt from Ms. Bentley that are described in this complaint.

60.     Non-party Dee Money Entertainment, Inc. is an active Georgia corporation,

formed August 27, 2004, with a principal office address of 8725 Roswell Road, "Suite O-256,"

Sandy Springs, Georgia 30350, but the "suite" is merely a private mailbox rented by defendants

from a Pak Mail franchise. The company's officers are defendant Walden McKenly Davis Jr. and

non-party Trinesa Ridgeway. It will need to be determined in discovery to what extent, if any,

Dee Money Entertainment, Inc. participated in the efforts to collect an alleged debt from Ms.

Bentley that are described in this complaint.

61.     Non-party Sky Kouture Inc. is an active Georgia corporation, formed January 16,

2016, with a principal office address of 8577 Kencrest Drive, Winston, Georgia 30187, which is

the residence of defendant Shaquana Yvonne Jackson. The officers of the company are defendant

Shaquana Yvonne Jackson and non-party Sharon Jackson. It will need to be determined in

discovery to what extent, if any, Sky Kouture Inc. participated in the efforts to collect an alleged

debt from Ms. Bentley that are described in this complaint.

62.     Non-party Never Eat Alone Ent, LLC is an active Georgia corporation, formed

March 27, 2015, with a principal office address of 2451 Cumberland Parkway SE, "Suite 3436,"

Atlanta, Georgia 30339, which is merely a private mailbox (No. 3436) rented from The UPS

Store No. 2687 by defendant Cassiusuis T. Simon. It will need to be determined in discovery to

what extent, if any, Never Eat Alone Ent, LLC participated in the efforts participated in the

efforts to collect an alleged debt from Ms. Bentley that are described in this complaint.

63.     All defendants, along with other companies, employees and agents to be identified

in discovery and named as additional defendants in this lawsuit, are intricately bound together

and combine their efforts in a joint and common enterprise and use concerted attempts to collect

debts allegedly owed by consumers throughout the United States. Defendants and the other

entities operate collectively and together, in such as way that they are collecting debts for the

benefit of each other, and making each participant jointly and severally for the unlawful acts of

each of the other participants.

64.     An entity that itself meets the definition of debt collector is liable for the unlawful

collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v.

National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman &

Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15

F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th

Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL

1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

65.     A shareholder, owner, officer, member, manager, employee or agent of a

corporate debt collector can be held liable for violating the FDCPA, without piercing the

corporate veil, by being directly involved in the day-to-day operation of the company, including

the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.   Facts

66.     Sometime prior to April 2020, plaintiff Barbara Bentley's private, personal and financial information, including Ms. Bentley's Social Security Number, date of birth, residential address, telephone numbers, and banking information, was compromised, stolen and unlawfully used to create a counterfeit payday loan account with "Webloan," account number 8005018018, with a related, counterfeit allegedly unpaid debt.

67.     The perpetrators included Ms. Bentley's counterfeit account in multiple portfolios containing thousands of other counterfeit accounts, and then sold the portfolios to multiple criminal enterprises across the country, to be used to contact and threaten consumers, including Ms. Bentley, with litigation, prosecution and other adverse consequences, in efforts to extort the payment of money from the credit identity theft victims.

68.     Ms. Bentley denies owing any money to Webloan or any other entity in connection with the account.

69.     Ms. Bentley refuses to pay any money to Webloan or any other entity in

connection with the account.

70.     Defendants somehow acquired Ms. Bentley's counterfeit account along with Ms. Bentley's stolen personal, private and financial information.

71.     On or about April 26, 2020, defendants placed a call to Ms. Bentley's cellular telephone and spoke with Ms. Bentley. In the ensuing conversation, defendants' employee and agent, who identified herself as a "mediator" with "Diversified Solutions Firm, Collection Division," made the following statements to Ms. Bentley:

a)     Ms. Bentley owed $735.42 for an unpaid payday loan obtained by Ms. Bentley from Webloan, original account number 8005018018.

b)     Webloan was in the process of filing a lawsuit against Ms. Bentley to collect the debt.

c)     The court was going to enter a judgment against Ms. Bentley in the amount of $1,854.11.

d)     Diversified Solutions Firm is a mediator, hired by Webloan to mediate the claim against Ms. Bentley.

e)     The Fair Debt Collection Practices Act requires Webloan to attempt to mediate the claim with Ms. Bentley and "stop action" in efforts to settle at a reduced balance and prevent the court from entering judgment against Ms. Bentley.

f)     Diversified Solutions Firm had authority to settle the account for $670.00, to be paid in monthly installments beginning May 1, 2020.

In response to defendants' false representations and threats, Ms. Bentley provided defendants'

employee and agent with Ms. Bentley's debit card information.

72.     On or about April 27, 2020, Ms. Bentley reviewed her financial records and was unable to find any documents to support defendants' claim that Ms. Bentley had ever obtained a loan from Webloan or any related entity. When Ms. Bentley realized that defendants were running a scam, Ms. Bentley immediately contacted her bank and cancelled the debit card account number that Ms. Bentley had provided to defendants.

73.     On May 1, 2020, defendants attempted to take $75.00 from Ms. Bentley's bank account, but the attempt was declined by Ms. Bentley's bank.

74.     On May 1, 2020, defendants, using the name Diversified Solutions Firm, sent an email from processingclerk@clerk.com to Ms. Bentley, with an attached letter advising Ms. Bentley that defendants' attempt to take $75.00 from Ms. Bentley's bank account had been declined by Ms. Bentley's bank. The letter falsely and wrongfully threatened that if Ms. Bentley did not immediately contact defendants to reschedule the payment, defendants would "forward this account to Chex Systems." The email and letter are attached to this complaint as Exhibit A.

75.     On May 27, 2020 at approximately 10:18 a.m., defendants, using the name Diversified Solutions Firm, sent an email from processingclerk@clerk.com to Ms. Bentley, with an internet link to a document at http://easyesign.io/d/140097, that if signed would authorize defendants to take money from Ms. Bentley's bank account. Ms. Bentley refused to sign the document. The email is attached to this complaint as Exhibit B.

76.     On May 27, 2020 at approximately 10:29 a.m., Ms. Bentley sent an email in reply to defendants' email, demanding that defendants cease communicating with Ms. Bentley. The email is attached to this complaint as Exhibit B.

77.     On May 27, 2020 at approximately 4:23 p.m., defendants, using the name Diversified Solutions Corp., sent another email from processingclerk@clerk.com to Ms. Bentley, with an attached document that if signed would authorize defendants to take money from Ms. Bentley's bank account. Ms. Bentley refused to sign the document. The email is attached to this complaint as Exhibit C.

78.     On May 27, 2020 at approximately 11:59 p.m., Ms. Bentley sent another email in reply to defendants' email, again demanding that defendants cease communicating with Ms. Bentley. The email is attached to this complaint as Exhibit C.

79.     On June 1, 2020 at approximately 12:58 p.m., defendants placed a call from telephone number 727-431-9352 to Ms. Bentley's cellular telephone and left the following message on Ms. Bentley's voice mail: "This message is intended for Barbara Bentley. This is in regards to your out of court settlement in Case 628096. Your case file has been in delinquent status since May 1st. They're under the impression that you are waiving your rights to voluntary restitution and you do not wish to move forward in regards to settling your account outside of mediation. Please be advised that if we do not reach contact with you before the end of business today, they are going to revoke your account, meaning that the $670.00 balance you agreed to settle will be revoked and we will pursue the full balance in a court setting total $1,854.11 if this complaint has to be forwarded out because you have yet to submit payment on your account. Again, if this is not your intention, you need to call the NSF Department at phone number 833-637-0169 in regards to getting your account back on track. Otherwise, we have done the best we could in regards to keeping your case file off the court docket but if we're not able to reach contact with you, we'll have to assume you're waiving your rights to voluntary restitution and

good luck to you ma'am."

80.     On June 4, 2020, solely for the purpose of identifying defendants and any other

entities involved in defendants' credit identity theft and debt collection scheme, Ms. Bentley

authorized a debit card payment to defendants in the amount of $55.95. According to the debit

card's issuing bank, the payment was processed by non-party PNS Partners, LLC,  ("PNS"),

doing business as Pay N Seconds, and deposited into defendants' merchant account, maintained

in the name of "WD Global Group," telephone number 833-409-9462, located in Georgia. The

payment posted on June 5, 2020.

81.     On June 4, 2020 at approximately 12:28 p.m., non-party PNS Partners, LLC,

doing business as Pay N Seconds, sent an email from no_reply@paynseconds.net to Ms. Bentley,

stating that Pay N Seconds is a third-party payment processor, processing Ms. Bentley's payment

for the "Merchant" named "WD Global Group" and advising Ms. Bentley that to cancel or make

any changes to the payment, Ms. Bentley "must contact WD Global Group at (800) 371-3817 or

email info@wdglobalgroup.com." The email is attached to this complaint as Exhibit D.

82.     On June 4, 2020 at approximately 12:31 p.m., defendants, using the name

Diversified Solutions Corp., sent an email from processingclerk@clerk.com to Ms. Bentley, with

an internet link to a document at http://easyesign.io/d/143192, that if signed would authorize

defendants to take money from Ms. Bentley's bank account. The document stated: "Current

Creditor Name: MM3." Ms. Bentley refused to sign the document. The email and linked

document are attached to this complaint as Exhibit E.

83.     On June 5, 2020 at approximately 4:34 p.m., defendants, using the name

Diversified Solutions Firm, sent an email from processingclerk@clerk.com to Ms. Bentley,

stating that "MM3" was not the "Current Creditor" and that defendants "only work on behalf of the original creditor." The email is attached to this complaint as Exhibit F.

84.     On June 5, 2020 at approximately 4:38 p.m., defendants, using the name Diversified Solutions Firm, sent an email from processingclerk@clerk.com to Ms. Bentley, with an internet link to a document at http://easyesign.io/d/143834, that if signed would authorize defendants to take money from Ms. Bentley's bank account. Ms. Bentley refused to sign the document. The email and linked document are attached to this complaint as Exhibit G.

85.     On June 10, 2020 at approximately 9:43 a.m., defendants placed a call from telephone number 727-304-6031 to Ms. Bentley's cellular telephone and left the following message on Ms. Bentley's voice mail: "This message is intended for Barbara Bentley in regards to Case File 628096. This is mediator Martha Langley contacting you in regards to your out of court settlement agreement. Unfortunately we do still see in the system that you have not yet signed the DocuSign that was sent to your email. We did address the issue with the typo with your DocuSign and we did get that fixed but we do still see that you have not signed this. Unfortunately if it is not signed by the end of business today or we do not reach contact with you, we will have to issue you a refund and status this as a dispute. You will have to move forward in regards to disputing this matter with the higher balance with our client directly in front of a court judge. Again, we cannot keep your case out here in the office if the DocuSign is not submitted so please either you contact the offices, if we don't hear from you and it's still not signed, we will have to assume that you're waiving rights to voluntary restitution. We will issue you a refund for the $50.00 payment that you made last week on June 4th and you will have to dispute the matter directly. Good luck to you ma'am. This is your final notification."

86.     On June 10, 2020 at approximately 10:40 a.m., defendants placed a call from telephone number 727-304-6031 to Ms. Bentley's cellular telephone and left the following message on Ms. Bentley's voice mail: "This message is intended for Barbara Bentley. This is Martha Langley again. Our Lead Supervisor did notify me that you did leave another email to us. I don't know why you continue to communicate with us via email. We don't communicate through email. We've been trying to call you every day now since you've been communicating with us through email and you've failed to pick up the phone, so we're going to issue you a refund for your $50.00 payment. We're going to status this account as a dispute. Please be advised you will be notified by a process server for a date to appear in regards to them pursuing the higher balance, just so that you're not confused on who you're paying, you can actually dispute this with them face to face and their lawyers in regards to disputing this directly. We definitely don't want any complications for you so we're going to issue you a refund and you can just take care of this with our client directly since you seem you cannot pick up the phone in regards to communicating with us. So you'll receive an email notification that your refund has been issued. A lot of times it does take up to six to ten business days for you to receive your refund. Please be advised that your social security number will be forwarded out to Chex Systems. If they do freeze anything with your account, that could be on hold until you appear in court so just keep those things in mind and maybe you should have legal representation contact the legal department within the next forty-eight hours. Your legal representation can contact the legal department. That will be at phone number area code 325-480-8447 and your legal representation will be able to file for a motion to discovery in regards to assisting you with disputing. They do have a forty-eight hour window since we're going to status you as a dispute

today. So just keep that in mind and good luck to you ma'am."

87.     On June 10, 2020 at approximately 10:42 a.m., non-party PNS Partners, LLC, doing business as Pay N Seconds, sent an email from no_reply@paynseconds.net to Ms. Bentley, stating that Pay N Seconds is a third-party payment processor, processing Ms. Bentley's payment for the "Merchant" named "WD Global Group" regarding "Account #: mm3" and advising Ms. Bentley that to cancel or make any changes to the payment, Ms. Bentley "must contact WD Global Group at (800) 371-3817 or email info@wdglobalgroup.com." The email is attached to this complaint as Exhibit H.

88.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

89.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

90.     Defendants and their employees and agents falsely represented that Ms. Bentley owed money in connection with a counterfeit account.

91.     Defendants and their employees and agents falsely represented that they had been retained by the putative original creditor, Webloan, to collect the alleged debt.

92.     Defendants and their employees and agents falsely represented the name of the entity that had retained defendants to collect the alleged debt.

93.     Defendants and their employees and agents falsely represented and inflated the amount of Ms. Bentley's alleged debt.

94.     Defendants and their employees and agents falsely represented that Ms. Bentley owed a debt that is not owed.

95.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

96.     Defendants and their employees and agents falsely represented that they are attorneys and a law firm.

97.     Defendants and their employees and agents falsely represented that they are mediators.

98.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Ms. Bentley's personal and financial information, in an effort to coerce the payment of money from Ms. Bentley.

99.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

100.    Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

101.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Bentley to collect the alleged debt.

102.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Bentley to collect the alleged debt.

103.    Defendants and their employees and agents falsely represented that a process

27

server was going to be dispatched to serve Ms. Bentley with a summons and complaint filed against Ms. Bentley in efforts to collect the alleged debt.

104.   Defendants and their employees and agents falsely represented that a court was going to enter a judgment against Ms. Bentley in connection with the alleged debt.

105.   Defendants and their employees and agents falsely represented that a court was going to enter a judgment against Ms. Bentley in connection with the alleged debt in the amount of $1,854.11.

106.   Defendants and their employees and agents falsely represented that defendants would report Ms. Bentley to ChexSystems, a consumer reporting agency.

107.   Defendants and their employees and agents falsely represented that defendants would report Ms. Bentley to ChexSystems, a consumer reporting agency, and negatively affect Ms. Bentley's credit.

108.   Defendants and their employees and agents falsely represented that defendants would report Ms. Bentley to ChexSystems, a consumer reporting agency, and cause ChexSystems to freeze Ms. Bentley's bank accounts.

109.   Defendants and their employees and agents falsely represented that Ms. Bentley had written a NSF check.

110.   Defendants and their employees and agents falsely represented and falsely implied that Ms. Bentley had committed fraud.

111.   Defendants and their employees and agents falsely represented and falsely implied that Ms. Bentley had committed a crime.

112.   Defendants did not intend to file a lawsuit against Ms. Bentley in any court in

28

efforts to collect the alleged debt.

113.    Defendants and their employees and agents falsely represented and falsely implied that the alleged debt was adversely affecting Ms. Bentley's ability to obtain credit and credit score.

114.    Defendants and their employees and agents wrongfully continued to communicate with Ms. Bentley, demand payment of the alleged debt, and falsely threaten Ms. Bentley with adverse consequences, after Ms. Bentley had repeatedly communicated with defendants in writing and demanded that defendants cease communications with Ms. Bentley.

115.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

116.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

117.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

118.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

119.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

120.    The FDCPA states that it is unlawful for a debt collector to make any false

representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

121.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

122.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

123.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

124.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

125.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

126.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

127.    The FDCPA states that it is unlawful for a debt collector to communicate in a

communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

128.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

129.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

130.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

131.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

132.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

133.    The FDCPA states that if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communications with the consumer, the debt collector shall not communicate further with the consumer. 15 U.S.C. § 1692c(c).

134.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the

consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

135.    Defendants and their employees and agents failed to timely send to Ms. Bentley
a notice containing the information required by 15 U.S.C. § 1692g(a).

136.    Each defendant and each defendant's employees, managers, owners, agents,
affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful
debt collection practices that are described in this complaint.

137.    Defendants and their employees, managers, owners, agents, affiliates and co-
conspirators each have intentionally and wilfully violated the FDCPA.

138.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate
abusive debt collection practices by debt collectors" and "to insure that those debt collectors who
refrain from using abusive debt collection practices are not competitively disadvantaged."  15
U.S.C. § 1692(e).

139.    Defendants and their employees, managers, owners, agents, affiliates and co-
conspirators, to increase their business and profits, have knowingly chosen to use debt collection
practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who
have chosen to abide by the law and refrain from using those same unlawful debt collection
practices.

140.    In connection with efforts to collect an alleged debt from Ms. Bentley,
defendants obtained and used personal information regarding Ms. Bentley from an internet skip-
tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and
Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data,
LLC.

141.    The database used by defendants was derived in part from non-public motor

vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

142.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

143.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.
>
> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

144.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

145.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

146.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained.   18 U.S.C. § 2721(b).

147.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Ms. Bentley.

148.    Defendants used the database to obtain, disclose and use personal information

regarding Ms. Bentley.

149.    Defendants made a false representation to the provider of the database to obtain

personal information regarding Ms. Bentley that was derived from Ms. Bentley's motor vehicle

record.

150.    Alternatively, the entity that obtained Ms. Bentley's personal information from

the database and disclosed the personal information to defendants, made a false representation to

the provider of the database to obtain personal information regarding Ms. Bentley that was

derived from Ms. Bentley's motor vehicle record.

151.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

152.    Defendants knowingly obtained, disclosed and used Ms. Bentley's personal

information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with

willful or reckless disregard for the law.

153.    No defendant had a "permissible use" as the phrase is defined in the DPPA to

obtain, use or disclose Ms. Bentley's personal information obtained from the database.

154.    No defendant had Ms. Bentley's consent, permission, authorization or waiver to

obtain Ms. Bentley's personal information from the database.

155.    A civil action under the DPPA may be commenced within four years after the

cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

156.   The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

157.   Defendants intentionally and wilfully violated the DPPA.

158.   Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

159.   As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

**V.    Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

160.   Plaintiff incorporates the foregoing paragraphs by reference.

161.   Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendants violated 15 U.S.C. § 1692c(c);

b)     Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

c)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading

representations and means in connection with the collection or attempted collection of a debt;

d)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

e)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

162.    Plaintiff incorporates the foregoing paragraphs by reference.

163.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

36

f)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind pursuant to which defendants obtained plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

g)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

Dated: June 29, 2020

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com